**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
ELIZABETH ECKARDT,

Civil Action:_____

**Plaintiff,**

v.

**VERIFIED COMPLAINT**

CENTRAL ORANGE PHYSICIAN SERVICES, P.C.
PHYSICIAN PRACTICE ENHANCEMENT, LLC,
CHILDEBERT ST. LOUIS, SAMANTHA CLAYTON,
AND JOSEPH J. CALABRO

**JURY TRIAL DEMAND**

**Defendants**.
-------------------------------------------------------------------X

Plaintiff ELIZABETH ECKARDT ("Plaintiff," "Ms. Eckardt") and through her

attorneys, Law Office of Jonathan R Suarez, PLLC, complaining of Defendants Central Orange

Physician Services, P.C. ("COPS"), Physician Practice Enhancement, LLC ( "PPE"), Dr. Childebert

St Louis ( "Dr. St Louis"), RN Samantha Clayton ("Ms. Clayton"), and Dr. Joseph J. Calabro ("Dr.

Calabro"), herein, allege as follows:

## JURISDICTION

1. This Court has Federal question subject-matter jurisdiction under 28 U.S.C. § 1331 and

29 U.S.C. § 216(b) because Plaintiff asserts claims under the Fair Labor Standards Act

("FLSA").

2. This Court has supplemental jurisdiction over Plaintiff's state-law claims under 28

U.S.C. § 1367.

3. This Court has personal jurisdiction over Defendants because, at all relevant times,

Defendants purposefully transacted business within the State of New York, employed Plaintiff in

New York, assigned Plaintiff to healthcare facilities located in New York, exercised control over

1

Plaintiff's employment in New York, and committed the wage-and-hour violations alleged herein in this District. Plaintiff's claims arise directly out of Defendants' New York activities.

## VENUE

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District. Defendants also conduct business here in New York State.

## PARTIES

5. Plaintiff **Elizabeth Eckardt** is an adult individual and licensed **Nurse Practitioner**, residing in the State of New York.

6. Defendant **Central Orange Physician Services, P.C.** ("COPS") is a professional corporation organized under the laws of the State of New Jersey, conducting business in New York by assigning healthcare professionals to New York nursing facilities.

7. Defendant **Physician Practice Enhancement, LLC** ("PPE") is a limited liability company organized under the laws of the State of Delaware and is duly registered to transact business in the State of New Jersey as a foreign limited liability company.  At all relevant times, PPE provided physician practice management, staffing, administrative, and supervisory services to healthcare facilities located in the State of New York and jointly employed Plaintiff within the meaning of the Fair Labor Standards Act and the New York Labor Law.

8. Defendant Dr. Childebert St. Louis is a physician who, at all relevant times, acted directly or indirectly in the interest of COPS and PPE with respect to Plaintiff's employment. Dr. St. Louis supervised Plaintiff's clinical work, directed her daily duties, reviewed her patient

2

evaluations and documentation, exercised authority over the manner and means of her work, and possessed operational control sufficient to qualify as an employer under 29 U.S.C. § 203(d).

9.  Defendant RN Samantha Clayton was employed by COPS and PPE and exercised supervisory authority over Plaintiff by assigning work, monitoring productivity, enforcing daily patient quotas, directing Plaintiff's work schedule, and participating in the management of Plaintiff's employment.

10.  Defendant Dr. Joseph J. Calabro is a shareholder and officer of Central Orange Physician Services, P.C. Upon information and belief, he exercised operational control over the business operations, compensation practices, payroll policies, and employment decisions affecting Plaintiff and acted directly or indirectly in the interest of Defendants with respect to Plaintiff's employment.

11.  At all relevant times, Defendants jointly employed Plaintiff and constituted "EMPLOYERS" within the meaning of the Fair Labor Standards Act ("FLSA"), and the New York Labor Law ("NYLL").

## I.  NATURE OF THE ACTION

12.  This action arises from Defendants' willful and unlawful employment practices in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the New York Labor Law ("NYLL"). Plaintiff Elizabeth Eckardt ("Plaintiff") seeks to recover unpaid wages, unpaid overtime compensation, statutory damages, liquidated damages, and other relief resulting from Defendants' systematic failure to comply with federal and state wage-and-hour laws.

13.  Although Defendants classified Plaintiff as an "independent contractor," the economic realities of the parties' relationship established that Plaintiff functioned as an employee under both the FLSA and the NYLL.

3

14.  Throughout Plaintiff's employment, Defendants exercised substantial control over Plaintiff's daily work by establishing her schedule, assigning her to healthcare facilities, determining her patient assignments, imposing mandatory productivity quotas, supervising her clinical performance, controlling her compensation, and directing the manner and means by which she performed her duties.

15.  Collectively, Defendants exercised actual and operational control over Plaintiff's employment by assigning Plaintiff's work, determining her schedule, supervising her performance, establishing her compensation, enforcing productivity requirements, maintaining employment records, and controlling her continued work opportunities. Accordingly, Defendants jointly employed Plaintiff within the meaning of the Fair Labor Standards Act and the New York Labor Law.

16.  Plaintiff performed services that were integral to Defendants' healthcare business and was economically dependent upon Defendants for her continued employment and compensation.

17.  During the course of her employment, Defendants required Plaintiff to work in excess of forty (40) hours per week while imposing mandatory productivity quotas requiring her to evaluate no fewer than twenty (20) patients each workday. Despite requiring Plaintiff to perform these services, Defendants failed to compensate her for overtime hours worked and failed to maintain accurate payroll and time records as required by Federal and New York law.

18.  Defendants also unlawfully withheld approximately three (3) months of Plaintiff's earned compensation, totaling approximately $80,740.00. Rather than paying wages already earned, Defendants attempted to justify their nonpayment by asserting alleged Medicare and Medicaid billing issues. Plaintiff alleges that such explanations were pretextual and offered only after Plaintiff demanded payment of long-overdue wages.

4

19. After Plaintiff complained about Defendants' failure to pay her earned compensation, Defendants materially reduced her work assignments, subjected her to hostility, and ultimately forced her separation from employment. Plaintiff alleges that these actions constituted unlawful retaliation in violation of the FLSA and the New York Labor Law.

20. As a direct and proximate result of Defendants' conduct, Plaintiff suffered substantial economic damages, including unpaid wages, unpaid overtime compensation, statutory damages, liquidated damages, and other losses recoverable under applicable Federal and New York law. Plaintiff therefore seeks all available legal and equitable relief, including attorneys' fees, costs, prejudgment interest, post-judgment interest, and such further relief as this Court deems just and proper.

## II. FACTUAL BACKGROUND

### A. Employer – Employee Relationship

21. Plaintiff Elizabeth Eckardt ("Plaintiff") is a licensed Nurse Practitioner and a resident of the State of New York.

22. In or about 2017, Plaintiff began providing healthcare services as a per diem Nurse Practitioner for Defendant Central Orange Physician Services, P.C. ("COPS"), a professional corporation organized under the laws of the State of New Jersey.

23. Plaintiff also performed services for Defendant Physician Practice Enhancement, LLC ("PPE"), providing medical care at skilled nursing and rehabilitation facilities throughout New York.

24. At all relevant times, Defendants COPS and PPE jointly employed Plaintiff within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203(d), and the New York Labor Law ("NYLL"), §§ 190 and 651. Defendants operated as a single integrated enterprise,

sharing management, supervisors, personnel, payroll functions, and control over Plaintiff's employment.

25. Defendants jointly assigned Plaintiff to provide medical services at Taconic Rehabilitation and Nursing at Ulster and Taconic Rehabilitation and Nursing at Beacon, New York, where Plaintiff performed clinical services for Defendants' benefit.

 **B.  Joint Employer Relationship**

26. At all relevant times, Defendants **Central Orange Physician Services, P.C. ("COPS")** and **Physician Practice Enhancement, LLC ("PPE")** jointly employed Plaintiff within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d), and the New York Labor Law. Although organized as separate business entities, Defendants jointly exercised substantial control over the terms and conditions of Plaintiff's employment.

27. COPS and PPE operated as a single integrated enterprise by coordinating their business operations, sharing management personnel, supervisory staff, employment policies, payroll functions, scheduling responsibilities, and administrative services relating to Plaintiff's employment.

28. Defendants jointly assigned Plaintiff to provide healthcare services at the Nursing home and rehabilitation facilities throughout New York, including Taconic Rehabilitation and Nursing at Ulster and Taconic Rehabilitation and Nursing at Beacon, and jointly determined the facilities where Plaintiff would perform services.

29. Defendants jointly established Plaintiff's work schedule, determined her work assignments, imposed mandatory productivity requirements, established the method and rate of her compensation, supervised her daily work activities, and maintained authority over Plaintiff's continued work opportunities.

6

30.  Defendants, acting through their officers, physicians, nurse managers, and supervisory personnel, exercised centralized control over Plaintiff's employment by directing her clinical duties, reviewing her performance, monitoring compliance with company policies, enforcing productivity quotas, and controlling the manner and means by which Plaintiff performed her work.

31. Defendants shared responsibility for Plaintiff's payroll administration, employment records, scheduling, supervision, and compensation practices, and jointly benefited from Plaintiff's services as a Nurse Practitioner.

32.  Plaintiff performed services that were integral to Defendants' healthcare business and did not perform work for an independently operated business. Instead, Plaintiff's work was directed, supervised, and controlled by Defendants for their mutual benefit.

33.  At all relevant times, Defendants possessed and exercised the authority, either directly or indirectly, to hire, assign, supervise, discipline, modify, suspend, or discontinue Plaintiff's work assignments and otherwise control the material terms and conditions of Plaintiff's employment.

34.  Based upon the totality of the circumstances and the economic realities of the parties' relationship, Defendants jointly employed Plaintiff and are jointly and severally liable for the violations of the Fair Labor Standards Act and the New York Labor Law alleged herein.

35.  At all relevant times, Defendants acted directly or indirectly in the interest of one another with respect to Plaintiff's employment. Each Defendant exercised operational control over significant aspects of Plaintiff's employment, and each participated in or had the authority to participate in the decisions concerning Plaintiff's hiring, supervision, compensation, work assignments, classification, payroll practices, and continued employment. Accordingly,

7

Defendants are jointly and severally liable for the wage-and-hour violations alleged in this Complaint.

### C.  Specific Allegations and Operational Control by COPS

36. At all relevant times, Defendant **Central Orange Physician Services, P.C. ("COPS")** exercised substantial operational control over Plaintiff's employment and acted as Plaintiff's employer within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d), and the New York Labor Law.

37. COPS assigned Plaintiff to provide healthcare services at nursing and rehabilitation facilities throughout the State of New York, including Taconic Rehabilitation and Nursing at Ulster and Taconic Rehabilitation and Nursing at Beacon.

38.  COPS established Plaintiff's work schedule, determined the facilities where Plaintiff would render services, established the terms and conditions of Plaintiff's employment, and retained the authority to assign, modify, or discontinue Plaintiff's work assignments.

39**.** COPS determined Plaintiff's method and rate of compensation, including compensating Plaintiff on a per-patient basis, establishing mandatory productivity requirements, and controlling Plaintiff's opportunities to earn compensation.

40.  COPS exercised supervision and control over Plaintiff's work through its physicians, nurse managers, and supervisory personnel, who reviewed Plaintiff's clinical work, monitored her performance, and ensured compliance with Defendants' policies, procedures, and documentation requirements.

41. COPS maintained, or had the authority to maintain, Plaintiff's personnel records, payroll information, scheduling records, and employment documentation, and exercised substantial control over the administration of Plaintiff's employment.

42.  Upon information and belief, COPS possessed the authority to hire, assign, discipline, remove, or discontinue Plaintiff's work assignments and exercised significant control over the terms and conditions of Plaintiff's employment.

43.  By virtue of its operational control over Plaintiff's employment, compensation, scheduling, supervision, and working conditions, COPS was Plaintiff's employer within the meaning of the Fair Labor Standards Act and the New York Labor Law.

### D.  Specific Allegations and Operational Controls by  PPE

44. At all relevant times, Defendant Physician Practice Enhancement, LLC ("PPE") exercised operational control over Plaintiff's employment. PPE assigned Plaintiff to healthcare facilities in New York, established Plaintiff's work schedule, determined the manner and method by which Plaintiff performed her duties, established productivity requirements, supervised Plaintiff's work through its managerial personnel, and controlled the compensation paid to Plaintiff.

45. PPE jointly maintained personnel records, payroll records, scheduling information, and employment documentation relating to Plaintiff. PPE also exercised authority over Plaintiff's assignments, compensation, supervision, and continued work opportunities.

46. PPE and COPS operated as a single integrated enterprise and joint employers by sharing management, employees, supervisory personnel, business operations, payroll functions, and control over labor relations. PPE and COPS jointly exercised authority over Plaintiff's employment and were jointly responsible for complying with the Fair Labor Standards Act and the New York Labor Law.

### E.  Specific allegations and Operational Control by Dr. Childebert St Louis

47. At all relevant times, Defendant Dr. Childebert St. Louis served as Plaintiff's

9

supervising physician and exercised direct supervisory authority over Plaintiff's clinical duties and day-to-day work.

48. Dr. St. Louis reviewed Plaintiff's patient evaluations, diagnoses, treatment plans, and clinical documentation, directed Plaintiff's work, monitored Plaintiff's performance, and exercised substantial control over the manner and means by which Plaintiff performed her duties.

49. Upon information and belief, Dr. St. Louis possessed authority to direct Plaintiff's work assignments, evaluate Plaintiff's performance, and make recommendations affecting Plaintiff's continued work assignments and compensation.

50. By virtue of his operational control over Plaintiff's employment, Dr. St. Louis was an employer within the meaning of 29 U.S.C. § 203(d) and the New York Labor Law.

**F. Specific Allegations and Operational Control by RN Samantha Clayton**

51. At all relevant times, Defendant **RN Samantha Clayton** acted as Plaintiff's direct supervisor and exercised day-to-day supervisory authority over Plaintiff's work.

52. RN Clayton established and monitored Plaintiff's daily productivity requirements, including the mandatory quota requiring Plaintiff to evaluate no fewer than twenty (20) patients per workday.

53. RN Clayton monitored Plaintiff's work performance, communicated work expectations, reviewed Plaintiff's compliance with Defendants' policies and procedures, and exercised authority concerning Plaintiff's assignments and workload.

54. Upon information and belief, RN Clayton participated in decisions affecting Plaintiff's work assignments and scheduling following Plaintiff's complaints regarding unpaid wages.

**G. Specific Allegations and Operational Control by Dr. Joseph J. Calabro**

10

55.  Upon information and belief, Defendant **Dr. Joseph J. Calabro** is a shareholder, owner, officer, and/or principal of Central Orange Physician Services, P.C., and exercised operational control over the company's business affairs and employment practices.

56.  Upon information and belief, Dr. Calabro possessed authority over payroll policies, compensation practices, staffing decisions, personnel policies, and compliance with federal and New York wage-and-hour laws.

57.  Dr. Calabro exercised operational control over Plaintiff's employment by establishing or approving compensation practices, employment classifications, payroll procedures, and policies governing Plaintiff's work.

58.  Upon information and belief, Dr. Calabro knowingly permitted Defendants to classify Plaintiff as an independent contractor while exercising employer-level control over Plaintiff's work, compensation, and working conditions.

59.  By virtue of his ownership interest and operational control over Defendants' employment practices, Dr. Calabro was an employer within the meaning of the Fair Labor Standards Act and the New York Labor Law.

### H.  Compensation

60.  Defendants compensated Plaintiff on a per-patient basis rather than on an hourly basis.

61.  Plaintiff received approximately Forty Dollars ($40.00) per patient during regular workdays and Sixty Dollars ($60.00) per patient during holidays, provided she met Defendants' mandatory productivity quota of at least twenty (20) patients per day.

62.  Plaintiff frequently worked substantially more than forty (40) hours per week, with workdays often extending until approximately 12:00 a.m. Despite requiring Plaintiff to work these hours, Defendants knowingly failed to compensate Plaintiff at one and one-half times her

11

regular rate of pay for overtime hours worked, in violation of the FLSA and the NYLL.

### I. Payroll Practices

63. Defendants failed to maintain complete and accurate records of Plaintiff's hours worked and compensation paid. Defendants further failed to provide Plaintiff with wage statements and payroll records that complied with the requirements of the New York Labor Law.

64. Defendants provided Plaintiff with pay stubs issued under the name Central Orange Physician Services that reflected only Gross Pay and Net Pay, without identifying the hours worked, regular rate of pay, overtime hours, or overtime compensation.

### J. Independent Contractor Agreement

65. Defendants classified Plaintiff as an "independent contractor" pursuant to a written Independent Contractor Agreement.

66. Notwithstanding that contractual label, Defendants exercised pervasive control over Plaintiff's employment. The Agreement required Plaintiff to provide on-site clinical services according to schedules established by Defendants, perform services at facilities designated by Defendants, comply with Defendants' operational requirements, and remain available for additional work and consultation as directed.

67. The Agreement further required Plaintiff to perform duties central to Defendants' business, including admissions, patient evaluations, treatment planning, physician communications, clinical documentation, discharge planning, quality assurance, and administrative responsibilities. Plaintiff performed services that were integral to Defendants' healthcare operations and not part of an independently operated business.

12

68. Plaintiff was required to comply with Defendants' policies and procedures and remained subject to continuous supervision by Defendants' physicians, nurse managers, and supervisory personnel regarding her work performance, patient documentation, scheduling, and productivity.

69. Although labeled an independent contractor, Plaintiff functioned as an employee under the economic realities of the parties' relationship because Defendants exercised substantial control over the manner and means by which Plaintiff performed her work.

70. Although Plaintiff executed an Independent Contractor Agreement, the contractual designation is not dispositive of Plaintiff's employment status under the Fair Labor Standards Act or the New York Labor Law. Whether an individual is an employee or an independent contractor is determined by the economic realities of the parties' relationship and the degree of control exercised by Defendants, rather than by the labels or terminology used in any written agreement. At all relevant times, Plaintiff was an employee under the FLSA and the NYLL, notwithstanding Defendants' characterization of her as an independent contractor.

### K. Failure to Pay Earned Compensation

71. Between approximately December 2024 and August 2025, Defendants failed to pay Plaintiff earned wages and overtime compensation required under Federal and New York law.

72. By approximately August 2025, Defendants had withheld approximately three (3) months of Plaintiff's earned compensation, totaling approximately **Eighty Thousand Seven Hundred Forty Dollars ($80,740.00).**

73. After Plaintiff repeatedly demanded payment of her earned wages, Defendants refused to compensate her and instead asserted purported Medicare and Medicaid billing concerns. Plaintiff alleges that these explanations were false and pretextual, advanced only after Plaintiff sought payment of compensation that had already been earned.

13

74. To this date, Plaintiff has not been paid for the services she rendered.

### L. Retaliation

75. Following Plaintiff's complaints regarding Defendants' failure to pay earned wages, Defendants materially reduced Plaintiff's work assignments, subjected Plaintiff to hostility and adverse treatment, and ultimately forced Plaintiff's separation from employment.

76. Defendants' retaliatory conduct was undertaken because Plaintiff engaged in protected activity by demanding payment of wages and objecting to Defendants' unlawful compensation practices.

### M. Damages

77. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered substantial economic damages, including unpaid wages, unpaid overtime compensation, liquidated damages, statutory damages, attorneys' fees, costs, and other relief available under the FLSA and the NYLL.

### III. WILLFULNESS OF DEFENDANTS' VIOLATION

78. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as though fully set forth herein.

79. At all relevant times, Defendants knowingly and intentionally classified Plaintiff as an independent contractor despite exercising substantial operational control over the manner and means by which Plaintiff performed her work. Defendants established Plaintiff's work schedule, assigned her work locations, supervised her daily duties, imposed mandatory productivity quotas, controlled her compensation, and directed the terms and conditions of her employment, all of which are indicia of an employer-employee relationship under the Fair Labor Standards Act and the New York Labor Law.

80. Defendants knowingly required Plaintiff to work in excess of forty (40) hours during one or more workweeks while failing to compensate Plaintiff at one and one-half times her regular rate of pay for overtime hours worked. Defendants knew or reasonably should have known that Plaintiff routinely worked overtime because they established her work schedule, assigned her patient workload, monitored her productivity, supervised her clinical duties, and reviewed her work product daily.

81. Defendants knowingly failed to make, keep, and preserve accurate payroll records, time records, and wage statements reflecting Plaintiff's hours worked, overtime hours, rates of pay, and wages earned, despite their statutory obligations under the Fair Labor Standards Act and the New York Labor Law. Such failures hindered Plaintiff's ability to verify the full extent of wages and overtime compensation owed and were undertaken in disregard of Defendants' legal obligations.

82. Defendants further knowingly withheld approximately three (3) months of Plaintiff's earned wages, totaling approximately **Eighty Thousand Seven Hundred Forty Dollars ($80,740.00)**, despite Plaintiff's repeated demands for payment. Rather than paying wages already earned, Defendants asserted purported Medicare and Medicaid billing concerns, which Plaintiff alleges were false and pretextual, advanced only after Plaintiff sought payment of compensation lawfully due.

83. After Plaintiff repeatedly demanded payment of her earned wages and objected to Defendants' unlawful wage-and-hour practices, Defendants retaliated against Plaintiff by materially reducing or withholding her work assignments, depriving Plaintiff of additional earning opportunities, and subjecting her to adverse treatment because she engaged in activity protected by the Fair Labor Standards Act and the New York Labor Law.

15

84**.** Defendants' conduct was not isolated, accidental, or the result of a good-faith mistake. Rather, Defendants knowingly, intentionally, and willfully disregarded their obligations under the Fair Labor Standards Act and the New York Labor Law by misclassifying Plaintiff, failing to pay earned wages and overtime compensation, failing to maintain accurate payroll records, and retaliating against Plaintiff after she asserted her statutory rights.

85**.** Accordingly, Defendants' violations were willful within the meaning of **29 U.S.C. § 255(a)** and the **New York Labor Law**, thereby entitling Plaintiff to the three-year statute of limitations under the Fair Labor Standards Act, liquidated damages, statutory damages, attorneys' fees, costs, and all other relief authorized by federal and New York law.

86. At all relevant times, Defendants constituted an enterprise engaged in commerce within the meaning of 29 U.S.C. § 203(s). Upon information and belief, Defendants had annual gross sales of more than $500,000 and regularly handled goods, medical supplies, equipment, pharmaceuticals, electronic records, Medicare and Medicaid reimbursements, and communications that move in interstate commerce.

## IV. CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### *Failure to Pay Overtime Wages*

**(Violation of the Fair Labor Standards Act, 29 U.S.C. §§ 207, 216(b))**

87. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

88. At all relevant times, Defendants **COPS** and **PPE** were employers engaged in commerce and in the provision of healthcare services, within the meaning of **29 U.S.C. §§ 203(d), (s)**.

89. Plaintiff was an employee within the meaning of **29 U.S.C. § 203(e)**.

90. Defendants knowingly suffered and permitted Plaintiff to work in excess of forty (40) hours during one or more workweeks while willfully failing to compensate Plaintiff at one and one-half times her regular rate of pay for all overtime hours worked, in violation of 29 U.S.C. § 207(a).

91. Defendants knew or should have known that Plaintiff routinely worked overtime because Defendants assigned Plaintiff's work schedule, established mandatory patient quotas, supervised her daily work, reviewed her clinical documentation, and controlled the manner and means of Plaintiff's performance of her duties.

92. Defendants further failed to make, keep, and preserve complete and accurate records of Plaintiff's hours worked, overtime hours, wages earned, and wages paid, as required by **29 U.S.C. § 211(c)** and **29 C.F.R. Part 516**.

93. Because Defendants failed to maintain accurate payroll and time records, Plaintiff is entitled to prove the extent of her uncompensated work through reasonable inferences and representative evidence, consistent with the burden-shifting principles recognized by the United States Supreme Court in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946).

94. Defendant's violation of the Fair Labor Standards Act was willful within the meaning of **29 U.S.C. § 255(a)**, Plaintiff is entitled to recover unpaid overtime compensation, liquidated damages, prejudgment interest where applicable, attorneys' fees, litigation costs, and such additional relief as authorized by law.

<u>**SECOND CAUSE OF ACTION**</u>

*Failure to Pay Overtime and Provide Wage Statements*

**(Violation of the NY Labor Law §§ 190, 195, 650 et seq. and 12 N.Y.C.R.R. § 142-2.2)**

95. Plaintiff realleges all preceding paragraphs.

96. Defendants are employers within the meaning of **NYLL §§ 2(6), 190(3), 651(6)**.

97. Plaintiff was an employee within the meaning of **NYLL § 651(5)**.

98. Defendants willfully failed to pay Plaintiff one-and-one-half times her regular rate for all hours worked in excess of forty (40) per week, in violation of **12 N.Y.C.R.R. § 142-2.2**.

99. Defendants also failed to provide **accurate wage statements** and maintain proper **payroll records**, in violation of **NYLL § 195(3)**.

100. As a result, Plaintiff is entitled to recover **unpaid wages, liquidated damages, statutory penalties up to $5,000, attorneys' fees, and costs** pursuant to **NYLL § 198(1-a)**.

### THIRD CAUSE OF ACTION

#### *Misclassification as an Independent Contractor*

#### (Violation of the Fair Labor Standards Act and the New York Labor Law)

101. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as though fully set forth herein.

102. Throughout Plaintiff's employment, Defendants intentionally classified Plaintiff as an independent contractor despite exercising substantial control over the manner and means by which Plaintiff performed her work.

103. Defendants established and controlled Plaintiff's work schedule, assigned Plaintiff to specific healthcare facilities, determined the days and hours she was required to work, and required Plaintiff to remain available to perform services as directed by Defendants.

104. Defendants controlled Plaintiff's compensation by establishing the rate and method of payment, including the amount paid per patient and the mandatory productivity requirements Plaintiff was required to satisfy before receiving compensation.

105. Defendants exercised continuous supervision over Plaintiff's work through their physicians, nurse managers, and supervisory personnel, who reviewed Plaintiff's clinical evaluations, patient documentation, treatment recommendations, and overall job performance.

106. Defendants required Plaintiff to comply with their policies, procedures, and clinical protocols, documentation requirements, operational standards and retained the authority to direct, supervise, and evaluate Plaintiff's daily work activities.

107. Defendants further imposed mandatory productivity quotas requiring Plaintiff to evaluate no fewer than twenty (20) patients per workday and monitored Plaintiff's compliance with those quotas through supervisory personnel.

108. Plaintiff performed services that were integral to Defendants' healthcare business and did not operate an independent business enterprise. Plaintiff did not market her services to the public, negotiate compensation independently, or exercise meaningful entrepreneurial discretion. Rather, Plaintiff was economically dependent upon Defendants for her continued employment and compensation.

109. The economic realities of the parties' relationship demonstrate that Defendants possessed and exercised the power to control Plaintiff's work schedule, compensation, assignments, supervision, and working conditions, and maintained records relating to Plaintiff's employment.

110. The existence of a written Independent Contractor Agreement does not preclude liability under the Fair Labor Standards Act or the New York Labor Law, where, as alleged herein, the economic realities of the relationship establish that Plaintiff functioned as an employee.

111. Accordingly, under the economic reality test applied by the United States Court of

19

Appeals for the Second Circuit, including *Carter v. Dutchess Community College*, 735 F.2d 8 (2d Cir. 1984), *Brock v. Superior Care, Inc.*, 840 F.2d 1054 (2d Cir. 1988), *Herman v. RSR Security Services Ltd.*, 172 F.3d 132 (2d Cir. 1999), and *Barfield v. New York City Health & Hospitals Corp.*, 537 F.3d 132 (2d Cir. 2008), Plaintiff was an employee within the meaning of the FLSA and the New York Labor Law, notwithstanding Defendants' characterization of Plaintiff as an independent contractor.

112.  As a direct and proximate result of Defendants' unlawful misclassification, Plaintiff was deprived of overtime compensation, wage protections, statutory benefits, and other rights guaranteed by the FLSA and the New York Labor Law, and is entitled to recover all damages, statutory penalties, liquidated damages, attorneys' fees, costs, and such further relief as provided by law.

**FOURTH CAUSE OF ACTION**

***Retaliation and Constructive Discharge***

**(Violation of FLSA § 15(a)(3), 29 U.S.C. § 215(a)(3); and NYLL § 215)**

113.  Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as though fully set forth herein.

114.  Plaintiff engaged in protected activity under the Fair Labor Standards Act and the New York Labor Law by repeatedly demanding payment of wages and overtime compensation lawfully earned, objecting to Defendants' unlawful wage-and-hour practices, and asserting her rights under applicable federal and state labor laws.

115.  Defendants were aware of Plaintiff's protected activity because Plaintiff directly complained to Defendants and their supervisory personnel regarding Defendants' failure to pay her earned wages and overtime compensation.

116. Shortly after Plaintiff engaged in protected activity, Defendants materially altered the terms and conditions of Plaintiff's employment by reducing her work assignments, limiting her opportunities to earn compensation, subjecting her to hostility and adverse treatment, and creating working conditions so intolerable that Plaintiff was effectively forced to separate from her employment.

117.  The close temporal proximity between Plaintiff's protected activity and Defendants' adverse employment actions, together with Defendants' pattern of conduct following Plaintiff's wage complaints, support a strong inference that Defendants retaliated against Plaintiff for exercising rights protected under the FLSA and the New York Labor Law.

118.  Defendants' actions were intentional, willful, malicious, and undertaken in reckless disregard of Plaintiff's statutory rights, in violation of 29 U.S.C. § 215(a)(3) and New York Labor Law § 215**.**

119. Defendants did not identify any legitimate, non-retaliatory reason for reducing Plaintiff's assignments or ending her employment. Rather, Defendants' adverse actions occurred only after Plaintiff repeatedly demanded payment of wages already earned, supporting a reasonable inference that Defendants' stated reasons, if any, were pretextual.

120. As a direct and proximate result of Defendants' unlawful retaliation, Plaintiff suffered substantial damages, including but not limited to lost wages, lost earning capacity, emotional distress, front pay or reinstatement, liquidated damages where authorized by law, attorneys' fees, litigation costs, and all other relief available under the Fair Labor Standards Act and the New York Labor Law.

121. Plaintiff is therefore entitled to recover all legal and equitable relief available under **29 U.S.C. § 216(b)**, **New York Labor Law § 215**, and any other applicable provision of law,

21

including compensatory damages, liquidated damages where authorized, reasonable attorneys' fees, costs, prejudgment interest where applicable, and such further relief as this Court deems just and proper.

## FIFTH CAUSE OF ACTION

### *Failure to Maintain Accurate Payroll and Employment Records*
### *(Violation of the Fair Labor Standards Act, 29 U.S.C. § 211(c), 29 C.F.R. Part 516, and the New York Labor Law §§ 195 and 661)*

122.  Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as though fully set forth herein.

123.  At all relevant times, Defendants were employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d), and the New York Labor Law, and were required to make, keep, and preserve accurate records of Plaintiff's hours worked, wages earned, overtime hours, rates of pay, payroll information, and other employment records.

124.  Pursuant to 29 U.S.C. § 211(c), 29 C.F.R. Part 516, and New York Labor Law §§ 195 and 661, Defendants were required to maintain accurate payroll and employment records and to furnish Plaintiff with accurate wage statements reflecting, among other things, the hours worked, rates of pay, gross wages, deductions, and net wages paid.

125.  Defendants failed to maintain complete and accurate records of Plaintiff's hours worked, overtime hours, wages earned, and wages paid. Defendants further failed to provide Plaintiff with wage statements and payroll records that complied with the requirements of the Fair Labor Standards Act and the New York Labor Law.

126.  Defendants' failure to maintain accurate payroll records and wage statements was

willful and constituted a pattern and practice designed to conceal their failure to pay Plaintiff all wages and overtime compensation required by law.

127. As a direct result of Defendants' failure to maintain legally required payroll records, Plaintiff has been prejudiced in establishing the precise number of hours worked and the full amount of wages and overtime compensation owed. Accordingly, Plaintiff is entitled to rely upon reasonable inferences and representative evidence concerning the hours worked and compensation due, as recognized under applicable federal law.

128. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff is entitled to recover all statutory damages, unpaid wages, unpaid overtime compensation, liquidated damages, attorneys' fees, litigation costs, and such further legal and equitable relief as authorized by the Fair Labor Standards Act, the New York Labor Law, and all other applicable provisions of law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff **ELIZABETH ECKARDT** respectfully requests that this Court enter judgment in her favor and against Defendants, jointly and severally, and award the following relief:

**A.** Unpaid earned wages in an amount to be determined at trial, including but not limited to approximately Eighty Thousand Seven Hundred Forty Dollars ($80,740.00)**,** together with any additional wages proven during discovery, pursuant to the Fair Labor Standards Act**,** 29 U.S.C. § 216(b)**,** and the New York Labor Law §§ 191, 193, and 198**;**

**B.** Unpaid overtime compensation for all hours worked in excess of forty (40) hours per workweek, together with all premium compensation required under 29 U.S.C. § 207(a) and **12** N.Y.C.R.R. § 142-2.2, in an amount to be determined at trial;

23

**C.** Liquidated damages under the Fair Labor Standards Act pursuant **to** 29 U.S.C. § 216(b) and under the New York Labor Law pursuant to N.Y. Labor Law § 198(1-a)**,** to the fullest extent permitted by law;

**D.** Statutory damages under the New York Wage Theft Prevention Act, including N.Y. Labor Law §§ 195(1), 195(3), 198(1-b), and 198(1-d)**,** for Defendants' failure to provide legally compliant wage notices and wage statements;

**E.** Compensatory damages, including lost wages, lost earning opportunities, front pay where appropriate, and all other damages recoverable under 29 U.S.C. § 215(a)(3**)** and N.Y. Labor Law § 215**,** arising from Defendants' unlawful retaliation against Plaintiff;

**F.** A declaration that Plaintiff was, at all relevant times, an employee within the meaning of the Fair Labor Standards Act and the New York Labor Law, notwithstanding Defendants' classification of Plaintiff as an independent contractor;

**G.** A declaration that Defendants' violations of the Fair Labor Standards Act and the New York Labor Law were willful within the meaning of 29 U.S.C. § 255(a) and N.Y. Labor Law § 198(1-a)**;**

**H.** Prejudgment interest on Plaintiff's New York Labor Law claims pursuant to N.Y. C.P.L.R. §§ 5001 and 5004**,** and post-judgment interest pursuant to 28 U.S.C. § 1961**;**

**I.** Reasonable attorneys' fees, litigation expenses, costs, and disbursements pursuant to 29 U.S.C. § 216(b)**,** N.Y. Labor Law §§ 198 and 215, and all other applicable provisions of law;

**J.** Such other legal or equitable relief as this Court deems just, proper, and appropriate to effectuate the remedial purposes of the Fair Labor Standards Act and the New York Labor Law.

24

K. Plaintiff respectfully demands a trial by jury on all claims and issues so triable as a matter of right under the Seventh Amendment to the United States Constitution and Rule 38 of the Federal Rules of Civil Procedure.


Dated: July 6, 2026
New York, New York

/s/ Jonathan R Suarez

_____

Jonathan R Suarez, Esq.
Law Office of Jonathan R Suarez, PLLC
267 5th Ave., Suite 106, Lower Level II
New York, NY 10016
CP:917.340.0896/917.965.24.26
     Email: Jonathan@jonsuarezlaw.com

## VERIFICATION

STATE OF NEW YORK    )
                               ) ss.
COUNTY OF  NEW YORK )

I, ELIZABETH ECKARDT, being duly sworn, depose and say that I am the Plaintiff in the proceeding, that I have read the annexed Complaint, and know the contents thereof, that the same is true to my knowledge except as to matters therein stated to be alleged upon information and belief; as to those matters, I believe them to be true.

I affirm this July 16, 2026, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

_____
ELIZABETH ECKARDT